IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

HARLENE DY,

                Plaintiff,                Case No.

v.                                            Judge
                                            Magistrate Judge
KOCH FOODS LLC,
                                            JURY DEMAND
                Defendant.
_____/

## COMPLAINT

Plaintiff Harlene Dy ("Ms. Dy") worked for Defendant Koch Foods LLC ("Koch Foods") for over four years when she was unlawfully terminated because of Koch's refusal to accommodate her disability and in retaliation for requesting accommodations and taking FMLA leave. Ms. Dy has a physical disability, GNE Myopathy, a progressive disease that affects her muscles. Despite her disability, Ms. Dy performed her job duties with Defendant Koch Foods LLC ("Koch Foods") with only minor accommodation. In January 2022, Ms. Dy was on approved FMLA leave. Prior to Ms. Dy's return she made accommodation requests. However, rather than engaging in a good faith interactive process, Koch Foods terminated Ms. Dy for requesting accommodation and in retaliation for taking leave for her disability under the FMLA. Upon information and belief, non-Asian employees were not discriminated against or retaliated against for their disabilities or requests for leave. Thus, Ms. Dy brings claims of discrimination and retaliation under the Americans with Disabilities Act, the Tennessee Disability Act, the Family and Medical Leave Act, Title VII of the Civil Rights Act of 1964, the Tennessee Human Rights Act, and 42 U.S.C. § 1981.

## PARTIES

1. Plaintiff, Harlene Dy, ("Plaintiff" or "Ms. Dy") is a citizen and resident of

1

Morristown, Hamblen County, Tennessee, and a former employee of Defendant. Plaintiff worked at Defendant's Morristown, Tennessee location.

2. Defendant, Koch Foods LLC ("Koch Foods") is a Tennessee Limited Liability Company. Its registered agent for service of process is C T Corporation System, 300 Montvue Rd., Knoxville, TN 37919-5546.

3. At all material times, Defendant has been an employer as defined by the ADA, 42 U.S.C. § 12111.

4. Plaintiff is a qualified individual with a disability under 29 C.F.R. §1630.2(g) and (h)(1).

5. At all material times, Defendant has been an employer as defined by the Tennessee Disabilities Act, T.C.A. § 8-50-103 ("TDA").

6. At all times material to this action, based on information and belief, Defendant has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the previous years and is an "employer" as defined by the FMLA, 29 U.S.C. § 2601.

## JURISDICTION AND VENUE

7. This is an action for unlawful employment practices brought under the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA") (Counts I - II), the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Counts III), the Family and Medical Leave Act 29 U.S.C. § 2601 (Count IV), Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII") (Count V), the Tennessee Human Rights Act, § 4-21-101 *et. seq* ("THRA") (Count VI), and 42 U.S.C. § 1981 (Count VII).

8. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

9. Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq.* and Title VII, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a Notice of Right to Sue for the charge and this action was commenced within 90 days of receipt of Notice of Right to Sue.

**FACTS**

10. Plaintiff, Harlene Dy, an Asian female from the Philippines, was employed by Koch Foods as a Production Worker from April 26, 2018, until her termination on February 14, 2022.

11. Ms. Dy was diagnosed with GNE Myopathy, a genetic disorder causing progressive skeletal muscle atrophy in December 2018.

12. Ms. Dy is a qualified individual with a disability under 29 C.F.R. §1630.2(h)(1). In particular, she has a disorder which affects major life activities of walking, standing, bending, and caring for oneself. Moreover, her disability affects the major bodily systems of the muscular, skeletal, and neurological systems.

13. Defendant Koch Foods is a for profit company that specializes in poultry processing.

14. Defendant employs more than 50 employees at its Morristown, Tennessee location.

15. In her role as Production Worker, Ms. Dy would debone poultry at her workstation.

16. On or around March 2020, Ms. Dy requested an accommodation to work no more than 5 days per workweek.

17. Defendant provided Ms. Dy detailed ADA accommodations paperwork to be filled out by her physician.

18. These documents were completed, and Ms. Dy was accommodated with a five-day

3

work week.

19. In May 2021, Plaintiff requested intermittent FMLA to attend doctors' appointments for her disability. It was approved through Defendant's third-party administrator.

20. Around this time, Ms. Dy's former supervisor, Amy Dierks, offered Ms. Dy a chair at her workstation to assist with her disability. However, this chair was regularly not provided.

21. Ms. Dy complained to Defendant's clinic, her Superintendent, Jerry Dean, and her Production Line Leads on a regular basis about the failure to accommodate her requests for the chair. Yet, the chair was only provided on an irregular basis.

22. Even after Ms. Dy's complaints, the failure to provide the chair accommodation continued.

23. On or around November 17, 2021, Ms. Dy requested continuous FMLA leave due to her disability being exacerbated by cold working conditions. The FMLA leave was requested to begin on December 6, 2021, and end on January 31, 2022. It was approved through the third-party administrator.

24. On or around November 26, 2021, while leaving at the end of her shift, Ms. Dy lost her balance while walking and fell in one of Defendant's hallways.

25. Ms. Dy spoke to Human Resources Administrator Lee Marcum, Caucasian, and requested an assistive device to help her transition from her workstation to the breakroom or bathroom as needed. Specifically, Ms. Dy requested the use of a walker.

26. Ms. Dy was allowed to use an assistive device for one shift.

27. Although there was no incident when she used the walker, Greg Aguilar, Defendant's Medical Officer, informed Ms. Dy that because the ground was wet, she could not continue to use the device.

28. However, the area around Ms. Dy's workstation was only wet when poultry was sprayed off the floor, which was a seldom occurrence around her work area, or when there was poultry on the ground, which Ms. Dy could easily avoid stepping on.

29. Instead, Savannah Johnson, Ms. Dy's supervisor, suggested that Ms. Dy ask a co-worker to help her every time she needed to go to and from the bathroom or breakroom.

30. Prior to taking FMLA leave, Ms. Dy spoke to Ms. Marcum again regarding the assistive walking device. Ms. Marcum told her not to worry about it and that they would address it when she returned from FMLA leave.

31. On or around December 6, 2021, Ms. Dy started her approved federally protected FMLA leave as a result of the cold conditions within the workplace.

32. For sanitation purposes, the workplace Ms. Dy was assigned had to remain at a low temperature. She had previously been assigned to other, warmer workstations.

33. On or around January 28, 2022, Ms. Dy provided Ms. Marcum a doctor's note releasing her to work on January 31, 2022.

34. On or around January 31, 2022, Ms. Dy again informed Defendant that she would need an accommodation of an assistive walking device to get to and from the restroom and breakroom and possible reassignment to a warmer working station.

35. At various times during her employment, Ms. Dy has been assigned to work in areas that are warmer, closer to the entrance of Defendant's facility, and not climate controlled at a low temperature.

36. Ms. Marcum sent Ms. Dy home until Ms. Dy could provide Ms. Marcum more specific information regarding her restrictions.

37. Unlike her accommodation request in March 2020, Ms. Marcum did not provide

Ms. Dy Defendant's detailed ADA accommodation request forms.

38. On or around February 2, 2022, Ms. Dy provided Ms. Marcum a doctor's note requesting an accommodation of a walker or power chair and to be reassigned to a warmer work station.

39. On or around February 9, 2022, Ms. Dy met with Ms. Marcum and HR Manager, Terry Price, Caucasian, and told them that her accommodation needs included the use of an assistive walking device and that, if possible, that she be reassigned to a warmer workstation.

40. Human Resources informed Ms. Dy they would call her back.

41. On February 14, 2022, Mr. Price and Ms. Johnson, Caucasian, met with Ms. Dy and terminated her due to her request for an assistive walking device. Defendant did not discuss with Ms. Dy options, including that she could use the cart that exists within production that is similar to a walker as an assistive device, nor any options regarding additional breaks from colder workstations, or additional clothing options while working.

42. Ms. Dy also tried to suggest that she be moved on the production line to an area closer to the entrance of the production line where it is a little warmer and closer to the break rooms and restrooms.

43. During her termination, Mr. Price also informed her that she was an evacuation risk in an emergency under the belief she could not run. However, during company fire drills, employees are told in no uncertain terms that they are <u>not</u> to run in an emergency.

44. Defendant employs several employees who move even slower than Ms. Dy due to their age. These employees are Caucasian.

45. Upon information and belief, Defendant did not terminate non-Asian or non-Filipino employees after they took FMLA leave or requested reasonable accommodations.

46. Defendant unilaterally cut off engaging in an interactive process with Ms. Dy regarding her accommodations request and summarily terminated her because of her disability.

47. At the time of termination, Ms. Dy had not exhausted her federally protected FMLA leave.

48. On May 5, 2022, Ms. Dy filed, without the assistance of counsel, a Charge with Equal Employment Opportunity Commission, alleging disability discrimination and retaliation.

49. In Ms. Dy's response to Defendant's Position Statement she included that Defendant believed her termination and discriminatory treatment was also the result of her race and national origin, Asian and Filipino.

## Count I
### Violation of ADA/ADAAA- Disability Discrimination

50. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

51. Pursuant to the ADAAA, an individual is considered to have a disability if she has a physical impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such impairment.

52. Plaintiff was a qualified individual with a disability as she had a disorder that affected her muscular, skeletal, and neurological systems, and substantially limits her in one or more major life activities, including walking, standing, bending, and caring for oneself.

53. Plaintiff was also regarded as disabled.

54. Plaintiff was discriminated against and eventually terminated because of her disability, Defendant's failure to engage in a good faith interactive process and its denial of her request for reasonable accommodation.

55. Plaintiff requested an assistive walking device to be used only when she walked to the restroom or breakroom and consideration to determine if she could be reassigned to a warmer

workstation as a reasonable accommodation. Defendant failed and refused to engage in a good faith interactive process with her. Rather, Defendant unilaterally terminated Plaintiff after it received the information from the physician and Plaintiff attempted to provide options and alternatives regarding her accommodations.

56. Plaintiff could perform the essential and non-essential functions of her job with reasonable accommodation.

57. Defendant further discriminated against Plaintiff when it terminated her because of her disability and need for an assistive device, but it did not terminate other slow-moving employees that did not have disabilities. Nor did Defendant require other slow-moving employees have an escort to the bathroom in lieu of an assistive device.

58. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

59. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### Count II
### Violation of ADAAA- Retaliation

60. Plaintiff restates and incorporates herein the foregoing paragraphs.

61. It is federal public policy and law under the Americans with Disabilities Act that employees must be able to exercise their rights without fear of reprisal or penalty from an employer.

62. Plaintiff engaged in protected activity under the ADA when she requested an accommodation, *e.g.*, an assistive walking device and consideration for reassignment to a warmer workstation. Such actions by the Plaintiff are statutorily protected activities under ADAAA.

63. In violation of the ADAAA, Defendant retaliated against Plaintiff by refusing to engage in the interactive process and then terminating her employment.

64. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

65. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count III
## Violation of TDA- Disability Discrimination

66. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

67. Pursuant to the TDA, an individual is considered to have a disability if she or he has a physical or mental impairment that substantially limits one or more major life activities.

68. Plaintiff was a qualified individual with a disability.

69. Plaintiff was discriminated against and eventually terminated because of her disability.

70. Defendant discriminated against Plaintiff when it terminated her because of her disability, but it did not terminate other slow-moving employees that did not have disabilities.

71. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

72. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### Count IV
### Violation of FMLA- Interference and Retaliation

73. Plaintiff restates and incorporates herein the foregoing paragraphs.

74. Defendant interfered with and retaliated against Plaintiff for taking protected FMLA leave.

75. At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

76. Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

77. Plaintiff was entitled to receive FMLA leave to care for her own serious health condition.

78. Defendant interfered with Plaintiff's right to take FMLA by terminating her before she exhausted her FMLA leave.

79. Defendant subjected Plaintiff to disparate terms and conditions of employment after she requested and took FMLA, including but not limited to interfering with her FMLA leave, and retaliating against her by terminating her after she requested and took FMLA leave.

80. Defendant's actions constitute interference and/or retaliation violations of the FMLA.

81. Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

82. Defendant's conduct harmed and caused damage to Plaintiff.

83. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count V
### (Race and National Origin Discrimination- Title VII)

84. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

85. It is a violation of Title VII for employers to discriminate against employees based on race.

86. Plaintiff was subjected to discrimination in Defendant's workplace because of her race and national origin, Asian and Filipino, in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq*.

87. Defendant is vicariously liable for the discrimination and harassment perpetrated by management and is liable for failing to remedy discrimination in the workplace.

88. Defendant took an adverse employment action against Plaintiff when it terminated her for requesting a reasonable accommodation, taking FMLA leave, and allegedly not being able to quickly evacuate the premises in a quick manner. Defendant did not take adverse employment actions against non-Asian or Filipino employees who moved as slow as or slower than Plaintiff, or who requested accommodation or took FMLA leave, in violation of Title VII of the Civil Rights Act of 1964.

89. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, and lost earnings and benefits.

## COUNT VI
### (Race and National Origin Discrimination under THRA)

90. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

91. Plaintiff was subjected to discrimination in Defendant's workplace because of her race and national origin, Asian and Filipino.

92. Defendant took an adverse employment action against Plaintiff when it terminated her for requesting a reasonable accommodation, taking FMLA leave, and allegedly not being able to quickly evacuate the premises in a quick manner. Defendant did not take adverse employment actions against non-Asian or Filipino employees who moved as slow as or slower than Plaintiff, or who requested accommodation or took FMLA leave, in violation of the Tennessee Human Rights Act.

93. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional and physical injury, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, lost earnings, attorney's fees, costs, interest and any other legal and equitable relief to which she may be entitled.

## COUNT VII
### (Race Discrimination under 42 U.S.C. § 1981)

94. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

95. Plaintiff is an Asian woman and was singled out for discrimination on the basis of her race.

96. Upon information and belief, non-Asian employees were not subjected to the type of treatment based on their physical abilities, disabilities, or requests for reasonable accommodations and FMLA.

97. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, lost earnings and benefits and attorney's fees, costs, interest and any other legal and equitable relief to which she may be entitled.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits, insurance and reimbursement for medical costs due to the loss of her insurance;

3. Actual damages incurred as a result of lost pay or benefits;

4. Reinstatement and/or front pay;

5. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

6. Liquidated damages;

7. Punitive damages;

8. Attorneys' fees and expenses;

9. Prejudgment interest and, if applicable, post-judgment interest; and

10. Such other and further legal or equitable relief to which she may be entitled under the ADAAA, the TDA, FMLA, Title VII, THRA, and 42 U.S.C. § 1981 and any other statutory or common law.

Respectfully submitted,

*/s Heather Moore Collins*
Heather Moore Collins BPR # 026099
Ashley Shoemaker Walter BPR# 037651
HMC CIVIL RIGHTS LAW, PLLC

7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com

*Attorneys for Plaintiff*